IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY MICHAEL DEARDEN,

    *Plaintiff*,

    v.

                               Civil Action No. ELH-22-843

EDWARD TITUS, JR., *et al*.,

    *Defendants*.

**MEMORANDUM**

Plaintiff Mary Michael Dearden has filed suit against four defendants in relation to real property located in Anne Arundel County, Maryland.  ECF 1 (the "Complaint"); ECF 7 (the "First Amended Complaint"); ECF 21 (the "SAC").  The defendants are Edward Titus, Jr.; Pebble, LLC ("Pebble"); Kaitlyn Tauber; and Christopher Fauceglio.  ECF 21, ¶¶ 2-5.  The SAC seeks "Sale in Lieu of Partition" pursuant to Md. Code (2015 Repl. Vol., 2021 Supp.), § 14-107(a) of the Real Property Article ("R.P.") (Count One); and "Accounting for Rents," pursuant to R.P. § 14-106 (Count Two).  *Id*. ¶¶ 13-17.  The real property is allegedly worth more than $75,000.  *Id*. ¶ 8. Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332.  *Id*. ¶ 6.

Defendants Fauceglio, Tauber, and Pebble have answered the SAC.  ECF 31 (Fauceglio); ECF 34 (Tauber); ECF 35 (Pebble).  However, defendant Titus has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).  ECF 22.  The motion is supported by a memorandum (ECF 22-1) (collectively, the "Motion") and several exhibits.  ECF 22-2 to ECF 22-4.  Plaintiff opposes the Motion.  ECF 26 (the "Opposition").  Titus has not replied, and the deadline to do so has passed.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I. Factual Background[1]

Plaintiff is a citizen of Florida.  ECF 21, ¶ 1.  Defendants Titus, Tauber, and Fauceglio are citizens of Maryland.  *Id.* ¶¶ 2, 4, 5.  And, defendant Pebble is a Maryland limited liability company ("LLC") with its principal place of business in Anne Arundel County.  *Id.* ¶ 3.  Tauber and Fauceglio are the members of Pebble.  *See* ECF 37 (Pebble Local Rule 103.3 Disclosure Statement) at 2.

By virtue of a deed (the "Vesting Deed") dated December 10, 1953, and recorded among the land records of Anne Arundel County, plaintiff and Titus "became owners of an interest in real property" located at 20 Pebble Drive in Baltimore (the "Property").  ECF 21, ¶ 8.[2]  A copy of the Vesting Deed is attached to the Complaint.  *See* ECF 1-2.[3]  Under the Vesting Deed, plaintiff and Titus are remaindermen who would own the Property as tenants in common upon the passing of the Property's life tenants.  *See id.* at 4; *see also* ECF 22-1 at 1.  A business known as "Frank & Bills [sic] Trailer Park" (the "Trailer Park") is located on the Property.  ECF 21, ¶ 9.

Titus entered into a contract of sale dated April 21, 2021, and amended on August 27, 2021, "by which he agreed to sell his 50% vested interest in the Property—first to Kaitlyn Tauber and Christopher Fauceglio, then to the LLC of which they are sole members." Pebble.  *Id.* ¶ 9.  Titus also entered into an "Asset Purchase Agreement" to sell the Trailer Park to Pebble in exchange for cash and a promissory note secured by a deed of trust and financing statement.  ECF 21, ¶ 9.  In

---

[1] As discussed, *infra*, at this juncture, I largely assume the truth of the facts alleged in the suit.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  However, the Motion contains a partial factual challenge to subject matter jurisdiction.  Therefore, when recounting the factual background, I also cite to documents that are included with the Motion.  *See Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

[2] Although the Property is located in Anne Arundel County, it has a Baltimore address.

[3] The Vesting Deed uses plaintiff's maiden name, Mary Michael Rupert.  ECF 21, ¶ 8.

connection with this transaction, Titus signed a "Special Warranty Deed" conveying his 50% undivided interest in the Property to Pebble.  *Id*. ¶ 10.  Pebble, in turn, signed a "Deed of Trust" naming Titus as Trustee, "to secure the purchase money debt."  *Id*.  According to the SAC, neither the Special Warranty Deed nor the Deed of Trust has been recorded in the land records of Anne Arundel County.  *Id*.

Plaintiff wants to sell the Property, "but the Property cannot be divided without loss or injury to the interested parties."  *Id*. ¶ 11.  In addition, the SAC alleges that Titus and Pebble have obtained rent from third parties for the use and enjoyment of the Property, and have not accounted for or shared such funds with plaintiff.  *Id*. ¶¶ 12, 17.

In an Affidavit attached to the Motion, Titus avers that his mother, Eleanor R. Titus, had been renting out the Property, and received the resulting rents, until her passing on January 24, 2021.  ECF 22-2 (Edward Titus Aff., ¶ 5).  An Estate for Eleanor Titus was opened with the Register of Wills for Anne Arundel County on or about February 26, 2021.  *Id.* ¶ 6.  No claims related to the unpaid rent, nor any other claims, were filed against the Estate within the six-month period contemplated by Md. Code (2022 Repl. Vol.), § 8-103(a)(1) of the Estates and Trust Article. *Id*. ¶ 7; *see also* ECF 22-4 (probate records).

Titus also avers that the "net receipt of rent" for the Property was $1,291.41 in 2018; $16,635.16 in 2019; $13,999.20 in 2020; and $1,331 in 2021, prior to the sale of the Property. ECF 22-2, ¶¶ 8-12; *see also* ECF 22-3 (profit and loss statements for the Property for tax years 2018, 2019, and 2020).  According to Titus, he "did not receive the proceeds of these rent receipts directly from the tenants."  ECF 22-2, ¶ 13.  I note that the profit and loss statements reflect gross rental income of $86,072.02 for 2018; $87,927.64 for 2019; and $90,330.03 for 2020.  ECF 22-3 at 2-4.  However, the statements also reflect expenses, resulting in the net receipt figures given

above.  *See* ECF 22-2 at 2-4.  Expenses include "E Titus Salary," taxes, utilities, repairs, and various other items.  *See id.*

## II. Standard of Review

Federal district courts are courts of limited jurisdiction; they possess "'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 586 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see Home Depot U.S.A., Inc. v. Jackson*, ___ U.S. ___, 139 S. Ct. 1743, 1746 (2019); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Thus, a federal district court may adjudicate a case only if it possesses the "power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted).  Simply put, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed."  *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (citation omitted).  "Because jurisdictional limits define the very foundation of judicial authority, subject matter jurisdiction must, when questioned, be decided before any other matter."  *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge the court's subject matter jurisdiction over the plaintiff's suit.  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  However, a court should grant a motion to

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *B.F. Perkins*, 166 F.3d at 647 (citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; accord *Clear Channel Outdoor, Inc. v. Mayor and City Council of Baltimore*, 22 F. Supp. 3d 519, 524 (D. Md. 2014). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The Motion does not specify whether it is bringing a facial or a factual challenge. But, its argument against Count One is purely legal, consistent with a facial challenge. Meanwhile, its argument against Count Two is premised on facts outside the SAC, and so is a properly considered a factual challenge. However, as discussed below, it is unnecessary to consider Titus's argument as to Count Two in order to resolve the Motion.

### III. Discussion

The Motion argues that the Court lacks subject matter jurisdiction over Count One, seeking sale in lieu of partition, because R.P. § 14-107(a) exclusively assigns jurisdiction over such actions to the Maryland circuit courts.  ECF 22-1 at 2-4.[4]  Furthermore, the Motion contends that if the Court lacks jurisdiction as to Count One, it may not independently exercise subject matter jurisdiction over Count Two, because the amount in controversy for that count is less than $75,000. *Id*. at 4-5.  The basis for this argument is the Motion's assertion that rent was received by Eleanor Titus, not defendant Titus, and that in any case plaintiff seeks one-half of the net rent receipts for the Property for the past three years, which amounts to less than $75,000.  *Id*.[5]

However, the Motion does not dispute that if the Court may properly exercise subject matter jurisdiction over Count One, then it may also exercise supplemental jurisdiction over Count Two.  *Id*. at 4.  And, the Opposition does not appear to contend that if the Court lacks jurisdiction over Count One, it may nevertheless exercise jurisdiction over Count Two.  *See* ECF 26 at 4-5.  In other words, resolution of the Motion's argument as to Count One resolves the Motion.  I turn to that argument.

---

[4] Plaintiff filed suit on April 7, 2022. *See* ECF 1. On May 16, 2022, legislation was approved repealing R.P. § 14-107 and enacting new provisions governing the partition of real property, to be located in Subtitle 7 of Title 14 of the Real Property Article. *See* 2022 Md. Laws, Ch. 401. No party has noted the statutory change.

It is not clear if the new provisions contain the "circuit court" language at issue here. However, the new statute does not take effect until October 1, 2022, and provides that "this Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any partition action filed before the effective date of this Act." *Id*. §§ 2, 3.

[5] The Motion asserts that plaintiff would only be able to recover three years of unpaid rents under the three-year statute of limitations set out in Md. Code (2020 Repl. Vol., 2021 Supp.), § 5-101 of the Courts and Judicial Proceedings Article. *See* ECF 22-1 at 5.

As indicated, federal courts are courts of limited jurisdiction. *Hanna*, 750 F.3d at 432 (quotation marks omitted) (citing *Kokkonen*, 511 U.S. at 377). As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter."

Notably, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen*, 511 U.S. at 377). Even where no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). And, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna*, 750 F.3d at 432.

Congress has conferred jurisdiction on the federal courts in several ways. Of relevance here, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.*, 545 U.S. at 552; *see* 28 U.S.C. § 1332. However, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

"For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co.*, 636 F.3d at 103.

7

With respect to an LLC, citizenship "must be traced through however many layers of partners or members there may be." *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003).

Section 1367(a) of 28 U.S.C. concerns "supplemental jurisdiction." This provision grants "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Of relevance here, "whether the federal-law claims and State-law claims are part of the same case is determined by whether they 'derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 615 (4th Cir. 2001).

The SAC alleges that plaintiff is a citizen of Florida and all defendants are citizens of Maryland. ECF 21, ¶¶ 1-5. In addition, Pebble's Local Rule 103.3 Disclosure Statement confirms that the only two members of Pebble, Tauber and Fauceglio, are both citizens of Maryland. *See* ECF 37 at 2. Moreover, the SAC alleges that the amount in controversy, *i.e.*, the value of the Property, exceeds $75,000. ECF 21, ¶¶ 6, 8. The Motion does not contest complete diversity, nor does it dispute that the amount in controversy as to Count One exceeds $75,000.

Instead, the Motion's argument regarding Count One is premised purely on the claim that R.P. § 14-107(a) requires actions for sale in lieu of partition to be filed in a Maryland circuit court, thus preventing this Court from exercising jurisdiction. The Motion points to the text of R.P. § 14-107(a), which states (emphasis added):

> A *circuit court* may decree a partition of any property, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase. If it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree its sale and divide the money resulting from the sale among the parties according to their respective rights. The right to a partition or sale includes the right

to a partition or sale of any separate lot or tract of property, and the bill or petition need not pray for a partition of all the lots or tracts.

However, the Motion's argument is squarely foreclosed by precedent.  "Jurisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . ., even though it created the right of action.'"  *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (quoting *Tennessee Coal, Iron & R. Co. v. George*, 233 U.S. 354, 360 (1914)).  Thus, in *Tennessee Coal*, 233 U.S. at 359-60, the Supreme Court held that a Georgia court could enforce the substantive provisions of an Alabama statute governing liability for workplace injuries that explicitly reserved jurisdiction to Alabama courts.  The Court remarked, *id*. at 360: "[A] State cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction."

Similarly, in *Railway Co. v. Whitton's Administrator*, 80 U.S. 270 (1871), the Supreme Court stated, *id*. at 286 (emphasis added):

> In all cases, where a general right is . . . conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court. *The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient.* Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

More recently, in *Marshall*, 547 U.S. at 312-14, the Supreme Court affirmed that the federal courts could exercise jurisdiction over a tortious interference claim related to a probate proceeding, notwithstanding a ruling by the Texas Probate Court that it had exclusive jurisdiction

9

over the claim.  *See also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

In the Fourth Circuit, *Markham v. City of Newport News*, 292 F.2d 711 (4th Cir. 1961), is instructive.  Plaintiff, a citizen of California, brought a tort suit against the city of Newport News, Virginia.  *Id*. at 712.  "[A]ll of the requisites of the federal diversity jurisdiction [were] present," but the district court dismissed the suit, citing a Virginia statute restricting such actions to "'a court of the Commonwealth [of Virginia] established under or pursuant to the Constitution of Virginia.'" *Id*. (quoting the statute) (alteration mine).  The Fourth Circuit reversed.  It stated, *id*. at 713, 716:

> The jurisdiction of the United States District Courts is fixed by the Congress, its acts being in implementation of Article 3, Section 2 of the United States Constitution. The Constitution provides that the judicial power of the United States shall extend to controversies between citizens of different states. Congress has authorized exercise of that power if the amount in controversy exceeds a specified amount. . . . The cases in the diversity jurisdiction involve rights created by a state, rights which are subject to definition, limitation and, frequently, negation by the state. The fact that the substantive right is a creature of the state, however, does not suggest that the state may deny the judicial power the states conferred upon the United States when they ratified the Constitution or thwart its exercise within the limits of congressional authorization. In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction.

> It became axiomatic, therefore . . . that whenever there was a substantive right enforceable in a judicial proceeding in any court of the state, it was enforceable in the courts of the United States if the controversy was between citizens of different states and involved the minimum amount of money.

> *         *         *

> From all of these cases, it is apparent that a court, in determining its own jurisdiction, must look to the constitution and laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state. It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.[ ]

10

Other circuits have reached identical conclusions.  *See, e.g.*, *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 666 (10th Cir. 2020) ([T]he scope of a federal court's subject matter jurisdiction is governed exclusively by acts of Congress.[ ]  And when Congress grants subject matter jurisdiction, no other entity—not the litigants and not the states—can divest a federal court of the same.[ ]); *Odom v. Penske Truck Leasing Co., L.P.*, 893 F.3d 739, 742 (10th Cir. 2018) ("[W]hen a state proscribes its own courts' jurisdiction over particular subject matter, it does not divest the authority of federal courts within its borders. . . . Congress alone defines the lower federal courts' subject-matter jurisdiction.); *VanDesande v. United States*, 673 F.3d 1342, 1350 (Fed. Cir. 2012) (citing "the well-established rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction"); *United States Disaster Response, LLC v. Omni Pinnacle LLC*, 511 F.3d 476, 481 (5th Cir. 2007) (holding that a Louisiana parish could be sued in a federal district court notwithstanding a Louisiana statute granting exclusive jurisdiction to that state's courts); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) ("[S]tate law may not control or limit the diversity jurisdiction of the federal courts."); *McGarry v. Lentz*, 13 F.2d 51, 52 (6th Cir. 1926) ("Obviously, no state Legislative can regulate, limit, or control the jurisdiction of the federal courts, nor can the laws of any state preclude resort to the federal courts, nor confer exclusive jurisdiction upon a designated state court, in a class of cases of which the federal courts of equity have theretofore been accustomed to assume jurisdiction."); *see also Barbosa v. Wells Fargo Bank, N.A.*, No. 12-12236-DJC, 2013 WL 4056180, at *5 (D. Mass. Aug. 13, 2013) (concluding that a Massachusetts statute granting "exclusive jurisdiction" to the Massachusetts Land Court over "try title actions," which resolve competing property claims, "does not divest the federal court of jurisdiction").

Thus, if R.P. § 14-107(a) is construed to limit sale in lieu of partition actions exclusively to the Maryland circuit courts, this provision cannot, consistent with the Constitution, limit the subject matter jurisdiction of this Court.  Given that the Motion advances no argument that the requirements of diversity jurisdiction are not otherwise satisfied as to Count One, the Court possesses jurisdiction over that claim.  And, even if the Motion is correct that the amount in controversy in Count Two is less than $75,000, it is clear that this claim is closely related to Count One, such that it comes within the Court's supplemental jurisdiction.

### Conclusion

For the reasons stated above, I shall deny the Motion.

An Order follows, consistent with this Memorandum.

Date:   August 4, 2022                                 _____/s/_____

                                                       Ellen L. Hollander
                                                       United States District Judge